The STATE of Ohio, Appellee,

v.

BYRD, Appellant.

[Cite as *State v. Byrd* (2001), 145 Ohio App.3d 318.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–010379.

Decided Aug. 21, 2001.

320

*Michael K. Allen,* Hamilton County Prosecuting Attorney, and *William E. Breyer,* Assistant Prosecuting Attorney; *Betty D. Montgomery,* Attorney General, *David M. Gormley,* State Solicitor, and *James V. Canepa,* Assistant Attorney General, for appellee.

*David H. Bodiker,* Ohio Public Defender, *Jane P. Perry, Randall L. Porter* and *Kathryn L. Sandford,* Assistant Ohio Public Defenders, for appellant.

---

*Per Curiam.*

Petitioner-appellant John Byrd, Jr., who is presently facing execution of the death sentence on September 12, 2001, appeals from the trial court's entry dismissing his successive postconviction petition. Byrd's appeal, filed on June 6, 2001, advances eight assignments of error, none of which we find to be well taken. Therefore, we affirm the judgment of the trial court.

## I. Procedural Posture

In May 1983, Byrd was charged in an indictment with one count of aggravated murder with death-penalty specifications and three counts of aggravated robbery in connection with the stabbing death of Monte Tewksbury, a convenience store clerk. One count of aggravated robbery was severed prior to trial. The remaining charges were tried to a jury, which found Byrd guilty as charged. Following a mitigation hearing, the jury recommended, and the trial court imposed, the death sentence for aggravated murder. The court imposed consecutive sentences of seven-to-twenty-five years' incarceration for the two counts of aggravated robbery.

Byrd's convictions and sentences were subsequently upheld on direct appeal to this court[1] and to the Ohio Supreme Court.[2] The United States Supreme Court denied Byrd's petition for a writ of certiorari[3] and his petition for rehearing.[4]

In December 1983, Byrd filed a motion for a new trial, which the trial court denied in September 1989. This court upheld the trial court's judgment,[5] and the Ohio Supreme Court subsequently declined jurisdiction.[6]

In the interim, Byrd had, in October 1988, filed his first petition for postconviction relief, in which he raised fifteen claims for relief. The trial court, upon the state's motion, entered summary judgment for the state on Byrd's petition. But, in February 1991, this court reversed the trial court's decision and remanded the case for further proceedings.[7] In April 1991, the trial court on remand again entered summary judgment in favor of the state on the petition, and Byrd appealed. This court affirmed the trial court's grant of summary judgment,[8] and the Ohio Supreme Court declined jurisdiction.[9]

---

1. See *State v. Byrd* (Feb. 5, 1986), Hamilton App. No. C–83076, unreported, 1986 WL 1512.

2. See *State v. Byrd* (1987), 32 Ohio St.3d 79, 512 N.E.2d 611.

3. See *Byrd v. Ohio* (1988), 484 U.S. 1037, 108 S.Ct. 763, 98 L.Ed.2d 780.

4. See *Byrd v. Ohio* (1988), 485 U.S. 972, 108 S.Ct. 1252, 99 L.Ed.2d 449.

5. See *State v. Byrd* (Feb. 13, 1991), Hamilton App. No. C–890659, unreported, 1991 WL 17781.

6. See *State v. Byrd* (1991), 61 Ohio St.3d 1421, 574 N.E.2d 1092.

7. See *State v. Byrd* (Feb. 13, 1991), Hamilton App. No. C–890699, unreported, 1991 WL 17783.

8. See *State v. Byrd* (Feb. 26, 1992), Hamilton App. No. C–910340, unreported, 1992 WL 37761.

9. See *State v. Byrd* (1992), 64 Ohio St.3d 1442, 596 N.E.2d 472.

Shortly thereafter, Byrd filed an App.R. 26(B) application for reconsideration with this court. We denied the application in October 1992,[10] and the Ohio Supreme Court affirmed our decision.[11] In October 1993, the Ohio Supreme Court denied Byrd's S.Ct.Prac.R. XI (2) motion for delayed reconsideration. In June 1994, the United States Supreme Court denied Byrd's petition for certiorari.[12]

In March 1994, Byrd filed a petition for a writ of habeas corpus in the United States District Court for the Southern District of Ohio. On December 28, 1995, the district court denied the petition. The United States Court of Appeals for the Sixth Circuit affirmed in April 2000.[13] The United States Supreme Court denied certiorari on January 8, 2001,[14] and it denied Byrd's subsequent petition for rehearing on February 20, 2001.[15]

On January 26, 2001, the district court lifted the stay of execution the Sixth Circuit had granted in June 1994, prompting Byrd to file, on that same day, a pleading in the Ohio Supreme Court captioned "Motion for Stay of Execution to Permit John Byrd, Jr. to Litigate the Issue of His Actual Innocence of the Death Penalty." Attached to the pleading was a proposed "Successive Petition to Vacate/Motion for New Trial." Byrd contemporaneously asked the Supreme Court to issue a stay of execution. The Supreme Court on February 9, 2001, denied Byrd's request for a stay on the ground that it was premature.[16] On February 20, 2001, the state filed a motion asking the Ohio Supreme Court to set an execution date, and on March 20, 2001, pursuant to the state's request, the Supreme Court set an execution date of September 12, 2001. At the same time, it remanded Byrd's case to the common pleas court for a hearing on Byrd's "actual innocence" claim.[17]

On April 9, 2001, Byrd filed a successive postconviction petition with the trial court, in which he presented three claims for relief. In his first and second claims for relief, he advanced claims of "actual innocence." His first claim was predicated on the theory that co-defendant John Brewer had actually killed

---

**10.** See *State v. Byrd* (Oct. 1, 1992), Hamilton App. No. C–830676, unreported.

**11.** See *State v. Byrd* (1993), 68 Ohio St.3d 1411, 623 N.E.2d 567.

**12.** See *Byrd v. Ohio* (1994), 512 U.S. 1246, 114 S.Ct. 2767, 129 L.Ed.2d 881.

**13.** See *Byrd v. Collins* (C.A.6, 2000), 209 F.3d 486.

**14.** See *Byrd v. Collins* (2001), 531 U.S. 1082, 121 S.Ct. 786, 148 L.Ed.2d 682.

**15.** See *Byrd v. Collins* (2001), 531 U.S. 1186 121 S.Ct. 1176, 148 L.Ed.2d 1034.

**16.** See *State v. Byrd* (2001), 91 Ohio St.3d 1435, 742 N.E.2d 135.

**17.** See *State v. Byrd* (2001), 91 Ohio St.3d 1468, 744 N.E.2d 190.

Tewksbury, and his second claim was based on his assertion that the trial testimony of state's witness Ronald Armstead and the grand-jury testimony of state's witness Virgil Jordan were not credible. In his third claim for relief, Byrd contended that Ohio courts were without jurisdiction to entertain his direct appeals and initial postconviction petition because the judgment of conviction omitted any reference to his pleas to the charges, as required by former Crim.R. 32(B) (now Crim.R. 32[C] ).

Byrd also filed, on April 9, a motion requesting that the trial court hold R.C. 2953.23(A), which governs successive petitions for postconviction relief, "[u]ncon-stitutional or [n]on-[r]etroactive" to his petition, a motion to set a scheduling order for discovery and an evidentiary hearing, and a motion for funds to employ a medical expert. On April 16, 2001, the court denied his motions for discovery, an evidentiary hearing, and a medical expert and granted the state's motion to quash discovery subpoenas to the records custodians for the state department of corrections, the Ohio State University Hospital, the Ohio Highway Patrol, the Hamilton County Sheriff's Office, the Hamilton County Prosecutor's Office, and Mercy Franciscan Hospital. The court also set a hearing date of May 4, 2001, for the successive postconviction petition and for the motion to hold R.C. 2953.23(A) unconstitutional.

The state moved to dismiss Byrd's successive postconviction petition on April 20, 2001. On May 4, 2001, after oral argument on the petition and the motion to hold R.C. 2953.23(A) unconstitutional, Byrd's attorneys filed a motion to amend the petition to add a fourth claim for relief. By entry dated May 25, 2001, the trial court denied Byrd's motion to amend and dismissed the petition.

## II. Assignments of Error

From that judgment, Byrd has taken the instant appeal in which he presents eight assignments of error.

### A. Constitutionality of R.C. 2953.23(A)

We address first Byrd's sixth assignment of error, in which he contends that the trial court erred when it denied his motion to hold R.C. 2953.23(A) "[u]ncon-stitutional or [n]on-[r]etroactive" to his postconviction petition. He argues that the application of current R.C. 2953.23(A) to his petition violated the due-process provisions of the Fifth and Fourteenth Amendments to the United States Constitution because it effectively precluded him from litigating the merits of his "actual innocence" claim. He asserts that, had the trial court applied to his successive petition the version of R.C. 2953.23(A) that was in effect at the times of his trial, his direct appeal, and his initial postconviction petition, it would have had jurisdiction to entertain his "actual innocence" claim. We disagree.

■ R.C. 2953.21 through 2953.23 set forth the means by which a convicted defendant may seek to have the trial court's judgment or sentence vacated or set aside. Postconviction relief allows a petitioner to make a collateral civil attack on his criminal conviction by filing a petition to set aside the judgment.[18] The relief afforded under the statutes is applicable, however, only where the petitioner's rights in the proceedings that resulted in his conviction were denied to such an extent the conviction is rendered void or voidable under the Ohio or the United States Constitution.[19]

R.C. 2953.21 was amended by Am.Sub.S.B. No. 4 ("Senate Bill 4") on September 21, 1995. While former R.C. 2953.21 provided that a postconviction petition could be filed "at any time" after the petitioner's conviction, amended R.C. 2953.21(A)(2) provides that the petition must be filed within one hundred eighty days from the filing of the trial transcripts in the petitioner's direct appeal or, if a direct appeal was not pursued, one hundred eighty days after the expiration of the time in which a direct appeal could have been filed. A defendant who had been convicted prior to the amendment of R.C. 2953.21 was given one year from Senate Bill 4's effective date, September 21, 1995, in which to file a postconviction petition, if that was later than the amended deadline.[20]

A trial court has jurisdiction to entertain an untimely or successive postconviction petition under the limited circumstances set forth in R.C. 2953.23. Prior to Senate Bill 4, R.C. 2953.23(A) provided that "the court may, in its discretion and for good cause shown, entertain a second petition or successive petitions for similar relief on behalf of the petitioner based upon the same facts or on newly discovered evidence." Under the current version of the statute, the phrases "in its discretion and for good cause shown" and "upon the same facts" have been replaced by a two-pronged test. R.C. 2953.23(A) now provides as follows:

"(A) Whether a hearing is or is not held on a petition filed pursuant to section 2953.21 of the Revised Code, a court may not entertain a petition filed after the expiration of the period prescribed in division (A) of that section or a second petition or successive petitions for similar relief on behalf of a petitioner unless both of the following apply:

"(1) Either of the following applies:

---

**18.** See *State v. Crowder* (1991), 60 Ohio St.3d 151, 573 N.E.2d 652.

**19.** See R.C. 2953.21(A)(1).

**20.** See Section 3 of Am.Sub.S.B. No. 4. See, also, *State v. Buoscio* (Dec. 27, 1999), Mahoning App. No. 98–CA–7, unreported, at 8, 1999 WL 1279172 ("R.C. 2953.21[A][2] is not unconstitutionally retroactive."); *State v. Risner* (May 13, 1999), Putnam App. No. 12–98–12, unreported, at 6, 1999 WL 378393 (holding that the time limit in R.C. 2953.21[A][2] is remedial in nature and does not violate Section 28, Article II of the Ohio Constitution).

"(a) The petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief.

"(b) Subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.

"(2) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted or, if the claim challenges a sentence of death that, but for the constitutional error at the sentencing hearing, no reasonable factfinder would have found the petitioner eligible for the death sentence."

Thus, under the current version of the statute, a trial court has no jurisdiction to entertain a successive postconviction petition unless it meets the following conditions: (1) the petitioner must show either that he was unavoidably prevented from discovering the facts upon which he relies in the petition, or that the United States Supreme Court has, since his last petition, recognized a new federal or state right that applies retroactively to the petition; and (2) the petitioner must show by clear and convincing evidence that a reasonable factfinder would not have found him guilty but for a constitutional error at trial.[21]

Byrd admits that his successive postconviction petition cannot satisfy the two-pronged test of the current version of R.C. 2953.23(A). His attorneys acknowledge that, since 1989, they have been in possession of an affidavit from co-defendant John Brewer stating that he, and not Byrd, fatally stabbed Tewksbury. Thus, Byrd cannot show that he was "unavoidably" prevented from presenting in a postconviction petition his claim of "actual innocence" prior to the expiration of the one-year grace period. Byrd argues instead that R.C. 2953.23(A), as amended by Senate Bill 4, violates the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution because the amendment made substantive changes in the law that may not be retroactively applied to his petition. Consequently, Byrd argues that the former rather than the current version of R.C. 2953.23 applies to his successive petition.

■ Byrd's argument fails initially in its underlying premise because R.C. 2953.23 was not applied retroactively to his petition. Statutes are presumed to

---

**21.** See *State v. Beuke* (1998), 130 Ohio App.3d 633, 636, 720 N.E.2d 962, 964–965, jurisdictional motion overruled (1999), 85 Ohio St.3d 1443, 708 N.E.2d 209, certiorari denied (1999), 528 U.S. 934, 120 S.Ct. 336, 145 L.Ed.2d 262; *State v. Garner* (Apr. 28, 2000), Hamilton App. No. C–990659, unreported, 2000 WL 492074.

apply prospectively only unless specifically made retroactive.[22]   Thus, the issue of whether R.C. 2953.23(A) may be constitutionally applied retrospectively does not arise unless there has been a prior determination that the General Assembly specified that the statute so apply.[23]

The amended version of R.C. 2953.23(A) does not indicate that it was intended to have retroactive application.[24]   Its requirements are triggered only by the filing of a postconviction petition after the expiration of the time period prescribed in R.C. 2953.21(A) or by the filing of a successive petition.   Amended R.C. 2953.21 was effective on September 21, 1995.[25]   A successive petition for postconviction relief filed after that date is thus governed by its amended statutory terms.   Byrd filed his petition on April 9, 2001.   Accordingly, the current version of R.C. 2953.23, applied prospectively, governs the disposition of Byrd's successive petition.

Additionally, amended R.C. 2953.23(A)'s provision of a "clear and convincing standard," as opposed to the former version's "good cause" standard, does not deprive Byrd of his due-process rights.[26]   A petitioner's right to file a successive postconviction petition is statutory not constitutional.[27]   As long as the amended version of R.C. 2953.23 bears a real and substantial relation to the public health,

---

22.   See R.C. 1.48.

23.   See *Landgraf v. USI Film Products* (1994), 511 U.S. 244, 266, 114 S.Ct. 1483, 1498, 128 L.Ed.2d 229, 252–253; *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 522 N.E.2d 489, paragraph one of the syllabus.

24.   See *State v. Schlee* (Dec. 17, 1999), Lake App. No. 98–L–187, unreported, 1999 WL 1313651.

25.   Numerous cases have held that amended R.C. 2953.21(A) is applicable to those persons convicted before the amendment's effective date.   See, *e.g.*, *State v. Tanner* (1998), 127 Ohio App.3d 550, 713 N.E.2d 480; *State v. Schulte* (1997), 118 Ohio App.3d 184, 692 N.E.2d 237; *State v. Halliwell* (1999), 134 Ohio App.3d 730, 732 N.E.2d 405; *State v. Reese* (June 2, 1999), Mahoning App. No. 98CA33, unreported, 1999 WL 397917, motion for stay denied (1999), 86 Ohio St.3d 1418, 711 N.E.2d 1012, appeal dismissed (1999), 86 Ohio St.3d 1463, 715 N.E.2d 566; *State v. Parks* (Sept. 15, 1998), Jefferson App. No. 96JE47, unreported, 1998 WL 635860.

26.   See *State v. McGuire* (Apr. 23, 2001), Preble App. No. CA2000–10–011, unreported, 2001 WL 409424.   See, also, *State v. Gibson* (Jan. 19, 2001), Portage App. No. 99–P–0114, unreported, at 6, 2001 WL 46245 (where the Eleventh Appellate District rejected a criminal defendant's argument that R.C. 2953.23[A][2]'s "clear and convincing" standard conflicted with the prevailing United States Supreme Court standard governing exhaustion of federal constitutional claims in state court proceedings).

27.   See *State v. Steffen* (1994), 70 Ohio St.3d 399, 410, 639 N.E.2d 67, 76, citing *Murray v. Giarratano* (1989), 492 U.S. 1, 109 S.Ct. 2765, 106 L.Ed.2d 1, and *Pennsylvania v. Finley* (1987), 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539.

safety, morals, or general welfare of the public, and it is not arbitrary or unreasonable, it is valid on due-process grounds.[28]

■ The "clear and convincing" standard in R.C. 2953.23(A) is a permissible procedural bar imposed by the General Assembly to limit a petitioner's repeated return to state court with nothing more than unsubstantiated claims. As a result, it bears a substantial relationship to legitimate state concerns.[29] Additionally, the fact that the amended statute may treat those petitioners whose claims arose before the amendment differently from those petitioners whose claims arose thereafter does not give rise to a due process violation.[30] "[T]he Fourteenth Amendment does not forbid statutes and statutory changes to have a beginning and thus to discriminate between the rights of an earlier and later time."[31]

■ In this case, Byrd has had access to Ohio's state courts since 1983 in the form of a trial, a direct appeal, and a postconviction petition. Byrd has also pursued a federal habeas corpus claim. Additionally, Byrd's attorneys admit that they could have pursued Byrd's "actual innocence" claim in 1989 when they first obtained possession of Brewer's affidavit, but that they chose not to do so for tactical reasons. Under these circumstances, to give validity to Byrd's argument against the application of current R.C. 2953.23(A) would unjustifiably give rise to undue burdens on the state judiciary by granting a virtually unlimited right to pursue endless petitions for postconviction relief. Byrd has had ample time to investigate and pursue his "actual innocence" claim, to preserve his defenses and objections, and to present all other cognizable claims he may have. R.C. 2953.23(A)'s imposition of a "clear and convincing" standard for relief does not deprive him of due process, because it is a reasonable procedural hurdle for successive postconviction petitions. As a result, we cannot hold that amended R.C. 2953.23(A)'s "clear and convincing" standard violates Byrd's due-process rights. We, therefore, overrule Byrd's sixth assignment of error.

B. Dismissal of Postconviction Petition and Denial of Evidentiary Hearing

In his first and seventh assignments of error, Byrd challenges the trial court's dismissal of his successive postconviction petition without an evidentiary hearing.

---

28. See *State v. McGuire* (Apr. 23, 2001), Preble App. No. CA2000–10–011, unreported, 2001 WL 409424.

29. See *State v. McGuire* (Apr. 23, 2001), Preble App. No. CA2000–10–011, unreported.

30. See *State ex rel. Lemmon v. Ohio Adult Parole Auth.* (1997), 78 Ohio St.3d 186, 677 N.E.2d 347.

31. See *Sperry & Hutchinson Co v. Rhodes* (1911) 220 U.S. 502, 505, 31 S.Ct. 490, 491, 55 L.Ed. 561, 563.

Byrd argues that the trial court's dismissal of his petition and its failure to hold an evidentiary hearing on his "actual innocence" claim violated the Ohio Supreme Court's March 20, 2001 remand to the trial court for a hearing on Byrd's "actual innocence" claim. We disagree. Byrd was granted a hearing in accordance with the order of remand. He was not, under the circumstances, entitled to an evidentiary hearing for the following reasons.

Under the postconviction-relief statutes, a criminal defendant seeking to challenge his conviction through a petition for postconviction relief is not automatically entitled to an evidentiary hearing.[32] Before granting a hearing on a postconviction petition, the trial court must determine, upon consideration of the petition, the files and records pertaining to the underlying proceedings, and any supporting evidence, whether the petitioner has "set forth sufficient operative facts to establish substantive grounds for relief."[33] If the petition and the files and records show that the petitioner is not entitled to relief, the court may dismiss the petition without an evidentiary hearing.[34] If the trial court dismisses the petition, it has the obligation to make and file findings of fact and conclusions of law.[35]

A petitioner may submit different types of evidence outside the record to support his claims. If the evidence consists of affidavits, the Ohio Supreme Court in *State v. Calhoun* has determined that the trial court has the discretion to judge the affidavits' credibility in determining whether to accept their truthfulness. In assessing the credibility of the affidavits, the trial court should consider the following factors:

"[w]hether the judge reviewing the postconviction petition is the same judge who presided over the trial, whether the affidavits submitted contain identical language or appear to have been drafted by the same person, whether the affidavits contain or rely on hearsay, whether the affiants are relatives of the petitioner or interested in the petitioner's success, and whether the affidavits contradict evidence proffered by the defense or are inconsistent with or contradicted by the affiant's trial testimony."[36]

---

**32.** See *State v. Cole* (1982), 2 Ohio St.3d 112, 2 OBR 661, 443 N.E.2d 169.

**33.** See *State v. Calhoun* (1999), 86 Ohio St.3d 279, 714 N.E.2d 905, paragraph two of the syllabus.

**34.** R.C. 2953.21(C).

**35.** R.C. 2953.21(G).

**36.** *State v. Fears* (Nov. 12, 1999), 1999 WL 1032592, citing *State v. Calhoun* (1999), 86 Ohio St.3d 279, 284–285, 714 N.E.2d 905, 911–912.

█ But even with the truthfulness of an affidavit assumed, if the information it contains "does not rise to the level of demonstrating a constitutional violation, then the actual truth or falsity of the affidavit is inconsequential."[37]

### Dismissal of Petition

#### 1. First Claim for Relief

In his first claim for relief, Byrd contends that he was "actually innocent" of aggravated murder because his co-defendant John Brewer killed Tewksbury. Byrd cited to portions of the trial transcript and material adduced at his trial to demonstrate that Brewer was the killer. Byrd additionally presented two affidavits signed by Brewer on May 16, 1989, and January 24, 2001, respectively, in which Brewer claimed that he, and not Byrd, fatally stabbed Tewksbury. Byrd also presented the affidavit of Dan Cahill, a fellow inmate of Brewer at the Southern Ohio Correctional Facility, who claimed that Brewer had told him that he murdered Tewksbury.

The seminal case on claims of "actual innocence" is *Herrera v. Collins*.[38] In *Herrera*, the United States Supreme Court held that a defendant's claim of "actual innocence" based on newly discovered evidence does not entitle him to federal habeas relief absent an independent constitutional violation that occurred in the underlying state criminal proceeding.

Ohio appellate courts, applying *Herrera*, have held that a defendant's claim of "actual innocence" based on newly discovered evidence does not provide substantive grounds for postconviction relief because it does not demonstrate a constitutional violation in the proceedings that actually resulted in the defendant's conviction.[39] These courts, focusing upon the inherent problems in acknowledging

---

37. See *State v. Calhoun* at 284, 714 N.E.2d at 911.

38. (1993), 506 U.S. 390, 113 S.Ct. 853, 122 L.Ed.2d 203.

39. See *State v. Jones* (Dec. 29, 2000), Hamilton App. No. C–990813, unreported, at 11, 2000 WL 1886307; *State v. Tolbert* (Dec. 12, 1997), Hamilton App. No. C–960944, unreported, at 11–12, 1997 WL 762027; *State v. Campbell* (Jan. 8, 1997), Hamilton App. No. C–950746, unreported, at 13, 1997 WL 5182, appeal dismissed (1997), 78 Ohio St.3d 1491, 678 N.E.2d 1228; *State v. Watson* (1998), 126 Ohio App.3d 316, 323, 710 N.E.2d 340, 344–345; *State v. Gillespie* (Mar. 9, 2000), Cuyahoga App. No. 75918, unreported, at 7, 2000 WL 263375; *State v. Burke* (Feb. 17, 2000), Franklin App. No. 99AP–174, unreported, at 9, 2000 WL 190569; *State v. Nivens* (Nov. 30, 1999), Franklin App. No. 99AP–242, unreported, at 9, 1999 WL 1072437; *State v. Roberts* (Nov. 4, 1999), Guernsey App. No. 99CA25, unreported, at 2, 1999 WL 1071658; *State v. Mack* (Oct. 28, 1999), Cuyahoga App. No. 75086, unreported, at 11–13, 1999 WL 980404; *State ex rel. Miller v. Curran* (Oct. 15, 1998), Cuyahoga App. No. 75252, unreported, at 4, 1998 WL 723178; *State v. Freshour* (Dec. 1, 1997), Pickaway App. No. 97–CA–20, unreported, at 22, 1997 WL 775818; *State v. Weaver* (Dec. 31, 1997), Lorain App. No. 97CA006686, unreported, at 11–12, 1997 WL 823965; *State v. Loza* (Oct. 13, 1997), Butler

"actual innocence" claims (the burden placed upon the state in prosecuting a case once time has passed, the dispersion of witnesses, fading memories, and the use of stale evidence[40]) have concluded that such claims are more properly raised in a motion for a new trial.[41] Furthermore, "history shows that executive clemency is the traditional 'fail safe' remedy for claims of innocence based on new evidence, discovered too late in the day to file a new trial motion."[42]

In this case, the trial court dismissed Byrd's claim of "actual innocence" for two reasons: first, because it did not give rise to a constitutional violation in the proceedings that resulted in his conviction; and, second, because the evidentiary basis for the claim—John Brewer's statement that he had actually killed Tewksbury—"lacked any credibility whatsoever." We agree.[43] With respect to the first reason, the trial court's ruling was in strict accordance with the law as we have articulated it in *State v. Jones, State v. Tolbert,* and *State v. Campbell.*[44] With respect to the second reason, we note, under *Herrera, supra,* that the evidentiary threshold for a claim of actual innocence is "extraordinarily high." On the state of the record in this case, the trial court was entitled to conclude that the evidence provided by Byrd in the affidavits fell "far short" of that which would have been necessary to make out a cognizable constitutional claim.

## 2. Second and Third Claims for Relief

In his second claim for relief, Byrd contended that he was actually innocent because the trial testimony of state's witness Ronald Armstead and the grand-jury testimony of state's witness Virgil Jordan were not credible. In his third claim for relief, Byrd alleged that the final sentencing entry in the common pleas court was defective because it omitted any reference to the plea Byrd had entered as required by former Crim.R. 32(B) (now Crim.R. 32[C] ), and that, as a

---

App. No. CA96–10–214, unreported, 1997 WL 634348, discretionary appeal not allowed (1998), 81 Ohio St.3d 1429, 689 N.E.2d 49.

40. See *State v. Mack* (Oct. 28, 1999), Cuyahoga App. No. 75086, unreported, at 13, 1999 WL 980404.

41. See *State v. Campbell* (Jan. 8, 1997), Hamilton App. No. C–950746, unreported, at 12–13, 1997 WL 5182.

42. *Herrera v. Collins* (1993), 506 U.S. 390, 391–392, 113 S.Ct. 853, 855, 122 L.Ed.2d 203, 210–211, paragraph (c) of the Reporter's syllabus.

43. Our review of the record shows that this case does not involve a request for a new trial based on newly discovered evidence under Crim.R. 33(A)(6). Therefore, we express no opinion on whether Byrd's evidence would entitle him to a new trial under that rule. Furthermore, to the extent the trial court addressed this issue, its analysis is advisory.

44. See fn. 39, *supra.*

result, no court had jurisdiction to entertain his direct appeals, the initial postconviction proceedings, or the habeas proceedings.

██ A claim for relief advanced in a postconviction petition is subject to dismissal without an evidentiary hearing under the doctrine of *res judicata* when it presents a matter that "was raised or could have been raised at trial or on direct appeal." To overcome the doctrine of *res judicata*, a petitioner must present cogent evidence outside the record.[45]

██ In this case, the trial court found that Byrd's second and third claims for relief were barred under the doctrine of *res judicata*. We agree with the trial court's conclusion. Byrd's second claim, challenging Armstead's credibility, was raised at his trial, on appeal, in his first postconviction petition, and in federal habeas corpus proceedings. Byrd's challenge to Virgil Jordan's credibility was also barred by *res judicata* because he could have raised this issue at trial or on direct appeal.

Byrd's third claim for relief, which related to the alleged sentencing defect, was likewise barred by *res judicata* because he could have raised this claim at trial or on direct appeal. Additionally, he presented no evidence outside the record demonstrating why he failed to do so. As a result, we cannot say that the trial court erred in dismissing Byrd's third claim for relief.

### Evidentiary Hearing

Given that Byrd's first claim of "actual innocence" did not constitute a substantive ground for postconviction relief, that the supporting evidence fell short of proving the claim, and that his second and third claims for relief were barred by *res judicata*, the trial did not err in dismissing Byrd's successive postconviction petition for relief without holding an evidentiary hearing. Accordingly, we overrule Byrd's first and seventh assignments of error.

### C. Discovery

██ In his second, third, and fourth assignments of error, Byrd argues that the trial court erred when it refused to allow him to conduct discovery to support the claims in his successive postconviction petition. This court has repeatedly held that trial courts are not statutorily required to compel discovery so that a petitioner may gather evidence to prove that an evidentiary hearing is warranted on his postconviction petition.[46] Given that discovery is not available in the initial

---

**45.** See *State v. Perry* (1967), 10 Ohio St.2d 175, 39 O.O.2d 189, 226 N.E.2d 104, paragraph nine of the syllabus.

**46.** See, *e.g.*, *State v. Fautenberry* (Dec. 31, 1998), Hamilton App. No. C–971017, unreported, 1998 WL 906395; *State v. Campbell* (Jan. 8, 1997), Hamilton App. No. C–950746, unreported;

stages of a postconviction proceeding and that the trial court determined here that it had no jurisdiction to entertain Byrd's successive postconviction petition, we cannot say that the trial court erred in refusing to allow Byrd to engage in discovery shortly after he had filed his successive petition. As a result, we overrule his second, third, and fourth assignments of error.

### D. Motion to Amend Petition

In his fifth assignment of error, Byrd argues that the trial court erred when it overruled his motion to amend his postconviction petition to add a fourth claim for relief. The additional claim alleged that, at the time of Byrd's trial, the state planted informant Virgil Jordan in the cell block where Byrd was housed in order to "obtain" inculpatory statements from him in violation of his right to counsel.

R.C. 2953.21(F) states that a petitioner may amend his petition for postconviction relief only with leave of court, when the state has filed an answer or motion. Thus, a trial court has discretion in granting or denying leave to amend. Absent an abuse of discretion, an appellate court will not disturb the grant or denial of leave to amend.[47] To constitute an abuse of discretion, a trial court's action must have been arbitrary, unreasonable, or unconscionable.[48]

In this case, Byrd filed his successive petition for postconviction relief on April 9, 2001. On April 20, 2001, the state filed a motion to dismiss Byrd's successive postconviction petition. On May 4, 2001, after oral argument on Byrd's petition, Byrd's attorneys filed a motion for leave to amend his petition to add a fourth claim for relief, which the state opposed on May 9, 2001.

In its May 25, 2001 entry dismissing Byrd's successive postconviction petition, the trial court stated the following relative to Byrd's motion to amend:

"The hearing in this matter was held on May 4, 2001 from 9:05 a.m. to 10:10 a.m. At no time during the hearing did Byrd's attorneys advise the Court that they planned to file a motion to amend their successive post-conviction petition to try and add a fourth claim. The attorneys for Byrd did not request a continuance of the hearing to file such a motion. The motion to amend was filed at 10:18 a.m. on May 4, 2001. The length of this pleading certainly indicates that it was prepared prior to the hearing in this matter.

---

*State v. Zuern* (Dec. 4, 1991), Hamilton App. Nos. C–900481 and C–910229, unreported, 1991 WL 256497; *State v. Buerger* (Dec. 20, 1989), Hamilton App. No. C–880664, unreported.

**47.** See *Wilmington Steel Products, Inc. v. Cleveland Elec. Illum. Co.* (1991), 60 Ohio St.3d 120, 121–122, 573 N.E.2d 622, 623–625.

**48.** See *State ex. rel. The V Cos. v. Marshall* (1998), 81 Ohio St.3d 467, 469, 692 N.E.2d 198, 200–201.

"I am denying the defendant's Motion to Amend. The fourth claim has little if anything to do with the defendant's claim of 'actual innocence.' As previously stated, this Court has no jurisdiction to hear the defendant's petition."

Thus the trial court gave three reasons for denying Byrd's motion to amend. First, it had no jurisdiction to entertain Byrd's postconviction petition; second, the motion for leave was untimely; and, third, the additional claim bore no relationship to Byrd's "actual innocence" claim. Given the fact that we have already determined that the trial court was without jurisdiction to entertain Byrd's successive petition, we cannot conclude that the trial court abused its discretion by denying Byrd's request to add a fourth claim to his postconviction petition.

### E. Findings of Fact and Conclusions of Law

In his eighth assignment of error, Byrd argues that the trial court erred in making factual findings about the credibility of co-defendant John Brewer's affidavit, when it had already found that it did not have jurisdiction to hear Byrd's successive postconviction petition. We disagree.

Ordinarily when a trial court dismisses a petition for postconviction relief, it is statutorily required to make and file findings of fact and conclusions of law.[49] Such findings are necessary to apprise the petitioner of the grounds for the judgment of the trial court and to enable the appellate courts to properly review the case.[50] The Ohio Supreme Court has held, however, that a trial court has no duty to issue such findings of fact and conclusions of law when denying a petitioner's second or successive petition for postconviction relief.[51]

In this case, the trial court was confronted with a novel situation. Although the court had determined that it had no jurisdiction to entertain Byrd's successive petition for postconviction relief under R.C. 2953.23, it arguably had to show that it had complied with the Ohio Supreme Court's remand. That remand required the trial court to conduct a hearing on the issue of Byrd's "actual innocence" claim.

The remand gave the trial court the ability to determine whether Byrd's petition met the jurisdictional mandates contained in R.C. 2953.21 through 2953.23 and to assess Byrd's "actual innocence" claim. Because the findings of

---

49. R.C. 2953.21(G).

50. See *State ex rel. Carrion v. Harris* (1988), 40 Ohio St.3d 19, 530 N.E.2d 1330.

51. See *State ex rel. Carroll v. Corrigan* (1999), 84 Ohio St.3d 529, 705 N.E.2d 1226; *State ex rel. Fuller v. Sutula* (1999), 86 Ohio St.3d 301, 714 N.E.2d 924.

fact and conclusions of law were a reasonable and logical response to the Ohio Supreme Court's remand for a "hearing" on Byrd's "actual innocence" claim, we overrule Byrd's eighth assignment of error.

### III.  Conclusion

Based on the foregoing reasons, we affirm the judgment of the trial court.

*Judgment affirmed.*

GORMAN, P.J., WINKLER and SHANNON, JJ., concur.

RAYMOND E. SHANNON, J., retired, of the First Appellate District, sitting by assignment.