DECISION.
{¶ 1} Petitioner-appellant Thomas McIntosh has taken the instant appeal from the judgment of the Hamilton County Court of Common Pleas denying his petition for postconviction relief. On appeal, he presents three assignments of error, in which he challenges the common pleas court's failure to afford him relief under Civ.R. 60(B) and the denial of his postconviction petition without an evidentiary hearing. Upon our determination that McIntosh was entitled to an evidentiary hearing on two of the claims for relief advanced in his petition, we reverse in part the judgment of the court below.
 {¶ 2} In February of 2000, a Hamilton County grand jury returned a fourteen-count indictment against McIntosh and eight other individuals. The indictment charged McIntosh with two counts of possession of marijuana, a single count of trafficking in marijuana, and a single count of conspiracy to possess and/or traffic in marijuana. McIntosh's co-indictees entered negotiated pleas, and McIntosh alone proceeded to a trial of the charges before a jury. In September of 2000, the jury found McIntosh guilty as charged, and the trial court sentenced him as appears of record.[1]
 {¶ 3} McIntosh subsequently filed a "Petition for Postconviction Relief and Alternative Motion to Set Aside Judgment Pursuant to Criminal Rule 57 and Civil Rule 60(B)." On September 4, 2002, the common pleas court placed of record its findings of fact and conclusions of law and its entry denying the postconviction petition.
 I. {¶ 4} We address first McIntosh's third assignment of error, in which he challenges the denial of his postconviction petition without an evidentiary hearing. This challenge is well taken in part.
 {¶ 5} To prevail on a postconviction claim, the petitioner must demonstrate a denial or infringement of his rights in the proceedings resulting in his conviction that renders the conviction void or voidable under the Ohio Constitution or the United States Constitution. See R.C.2953.21(A)(1). In advancing such a claim, the petitioner bears the initial burden of demonstrating, through the petition and by supporting affidavits and the files and records of the case, "substantive grounds for relief." R.C. 2953.21(C).
 {¶ 6} A postconviction claim is subject to dismissal without an evidentiary hearing if the petitioner has failed to submit with his petition evidentiary material setting forth sufficient operative facts to demonstrate substantive grounds for relief. See id.; State v. Pankey
(1981), 68 Ohio St.2d 58, 428 N.E.2d 413; State v. Jackson (1980),64 Ohio St.2d 107, 413 N.E.2d 819. Conversely, "the court must proceed to a prompt hearing on the issues" if "the petition and the files and records of the case show the petitioner is * * * entitled to relief." R.C. 2953.21(E).
 A. {¶ 7} In the first claim for relief presented in his postconviction petition, McIntosh contended that the prosecution had denied him his constitutionally-secured right to compulsory process and to present a defense, when it had entered into plea agreements with three of his co-indictees that effectively precluded them from testifying at his trial as witnesses for the defense. In his sixth claim, McIntosh challenged trial counsel's competence in failing to compel by subpoena the appearance at trial of these co-indictees.
 {¶ 8} In support of his petition, McIntosh offered the affidavit of his wife and fellow indictee, Susan Kuhns McIntosh. She therein averred that she had entered a guilty plea in exchange for the state's promise that it would "recommend [a] sentence of probation." She stated that the state's promise was conditioned upon her agreement that she would neither attend nor offer testimony for the defense at her husband's trial, and that if called by the defense to testify, she would invoke herFifth Amendment privilege against self-incrimination. Further, she asserted, she was given to understand that her failure to abide by these conditions would result in the state's recommendation of a sentence of five years in prison and the removal of her son from her care.
 {¶ 9} This affidavit was corroborated in its essentials by correspondence to Kuhns McIntosh from her attorney. In his letter, counsel summarized and forwarded to Kuhns McIntosh a copy of a letter that counsel had sent to assistant prosecuting attorney Gus Leon, and that counsel characterized as the "final signed and initialed copy of [her] plea agreement." Counsel, in his letter to Kuhns McIntosh, also conveyed to her the trial court's vow to honor the plea agreement if she adhered to it.
 {¶ 10} McIntosh also supported his petition with a copy of the entry by which his fellow indictee Jeff Geraci had entered guilty pleas to various drug and gun charges in exchange for an "agreed * * * potential sentence [of] 5 years total on all charges." This agreement was expressly "[c]onditioned" on Geraci's promise that he "w[ould] not testify for any other [co-indictee]."
 {¶ 11} Finally, McIntosh offered the affidavit of counsel for Geraci and co-indictee Keiron Ashurst. Counsel averred that both Geraci and Ashurst had entered into plea agreements that precluded them from testifying for any co-indictee and that compelled them to invoke theirFifth Amendment privilege if they were called to testify. Counsel asserted that Geraci and Ashurst agreed to these conditions at the "insist[ence]" of the prosecuting attorneys assigned to their cases.
 {¶ 12} The record of the proceedings at McIntosh's trial further corroborates his claim. The record discloses that, prior to trial, McIntosh had moved pursuant to Crim.R. 14 for a severance of defendants. In the motion and at the hearing on the motion, McIntosh argued that the testimony of his co-indictees was crucial to his defense against the allegations of co-indictees Carl Wesley and Todd Klein, who had already entered guilty pleas. At the hearing, the trial court learned that all of McIntosh's co-indictees planned to enter guilty pleas, and assistant prosecutor Gus Leon assured the defense and the court that all of the co-indictees would be available to testify. The court thereupon denied the motion to sever.
 {¶ 13} At trial, the state called Wesley and Klein to testify to their involvement in a large-scale marijuana-distribution network. Their testimony, along with the testimony of Regional Narcotics Unit officers, implicated McIntosh.
 {¶ 14} After the state had rested, defense counsel moved for a mistrial. The defense argued that the state had committed what amounted to "prosecutorial misconduct in that it effect[ed] an obstruction of justice" by making the plea agreements of Geraci, Ashurst, and Kuhns McIntosh conditional upon their refusal to testify for the defense.[2]
Assistant prosecutor Leon initially denied defense counsel's charge that "part of the agreement with some [co-indictees] was that they [would] not testify for or against Thomas McIntosh to receive the recommendation from [the state] of a certain sentence." Assistant prosecutor Melynda Machol offered that "counsel [for the co-indictees] * * * would understand that implicitly."
 {¶ 15} Defense counsel then submitted a copy of the letter from Kuhns McIntosh's attorney to assistant prosecutor Gus Leon. The letter outlined the terms of the plea agreement, including Kuhns McIntosh's promise that, in exchange for a sentencing recommendation of "one (1) year nonreporting probation," she would "NOT testify on behalf of her husband" and "if called as a witness, she [would] claim Spousal Privilege and her 5th amendment rights." Assistant prosecutor Leon asserted that the terms of the plea agreement set forth in the letter were "not at [the state's] suggestion," but were "what [Kuhns McIntosh's counsel had] worked out and [the state had] agreed to * * *." He also denied defense counsel's allegation "that there was another provision where [Kuhns McIntosh] would not be allowed in the courthouse," adding, "She's in the courthouse. She can come in." Upon assistant prosecutor Leon's assurances that Kuhns McIntosh was available to be subpoenaed and brought before the court, the trial court denied the motion for a mistrial.
 {¶ 16} The copy of the letter submitted in support of the motion for a mistrial was not made a part of the trial record. But the exchange among counsel and the trial court makes clear that the letter submitted at trial was an earlier incarnation of the letter that Kuhns McIntosh's counsel had, well before McIntosh's trial, forwarded to her as the "final signed and initialed copy of [her] plea agreement" (and that McIntosh submitted in support of his postconviction petition). In contrast to the letter submitted at trial, the letter forwarded to Kuhns McIntosh bore interlineations that appear to have been initialed by assistant prosecutor Leon, indicating that Kuhns McIntosh's sentencing would be delayed until after her husband's trial, and that she was "not to attend [his] trial."
 {¶ 17} The Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution preserve to a criminal accused the right to present witnesses in his defense and to compel their attendance at trial. See Washington v. Texas (1967), 388 U.S. 14, 19,87 S.Ct. 1920; Columbus v. Cooper (1990), 49 Ohio St.3d 42, 44,550 N.E.2d 937. This right "is in plain terms the right to present a defense" and is "a fundamental element of due process of law." Washingtonv. Texas, 388 U.S. at 19, 87 S.Ct. 1920.
 {¶ 18} The government must aid an accused, and may do nothing to impede him, in the exercise of this right. Thus, the United States Supreme Court in Washington v. Texas, supra, held that a state procedural statute that precluded persons charged as principals, accomplices, or accessories in the same crime from testifying as witnesses for each other denied the defendant his Sixth Amendment right to compulsory process for obtaining witnesses in his favor, when it operated to exclude the relevant, material, and vital testimony of a co-conspirator. See, also,United States v. Valenzuela-Bernal (1982), 458 U.S. 858, 102 S.Ct. 3440
(holding that a defendant was denied due process by the deportation of aliens before they could be questioned, if the defendant could show that the evidence lost was material and favorable to the defense); Webb v.Texas (1972), 409 U.S. 95, 93 S.Ct. 351 (holding that the defendant was denied due process, when his only witness refused to testify after the trial court had, upon its own initiative, warned the witness of the penalties for perjury in "unnecessarily strong terms" and had thereby "effectively dr[iven] the witness off the stand").
 {¶ 19} To establish a violation of the Sixth Amendment right of compulsory process or the Fifth Amendment right to due process, the accused must show that the omitted testimony would have been both material and favorable to his defense. See United States v.Valenzuela-Bernal (1982), 458 U.S. 858, 868-873, 102 S.Ct. 3440. The requirement that the omitted testimony be "material" to the defense "reflect[s] [an] overriding concern with the justice of the finding of guilt." Thus, the omitted testimony "must be evaluated in the context of the entire record," and neither the Sixth nor the Fifth Amendment is implicated if, upon consideration of the omitted testimony, there remains "no reasonable doubt about guilt." See id. at 874, 102 S.Ct. 3440
(quoting United States v. Agurs [1976], 427 U.S. 97, 112-113,96 S.Ct. 2392).
 {¶ 20} McIntosh's postconviction petition and its supporting evidentiary material, along with the record of the proceedings at trial, provided uncontroverted evidence that the state had entered into plea agreements with Geraci, Ashurst, and Kuhns McIntosh that effectively precluded them from testifying for the defense at his trial. But McIntosh failed to offer in support of his petition the substance of the witnesses' proposed testimony to demonstrate that their testimony would have been material and favorable to the defense.
 {¶ 21} This deficiency may fairly be explained, however, by the fact that the right to compel the witnesses' testimony, which was effectively denied McIntosh at trial, was also denied him in the initial stages of his postconviction proceeding. See Civ.R. 26 and 30 (which permit a civil litigant to subpoena and depose witnesses); State v. Byrd
(2001), 145 Ohio App.3d 318, 332-333, 762 N.E.2d 1043 (holding that, although proceedings under R.C. 2953.21 are civil, a petitioner may not, in the initial stages of a postconviction proceeding, avail himself of the civil rules governing discovery). The Supreme Court has recognized that such problems of proof require that some accommodation be made to allow a defendant to satisfy the materiality requirement. See UnitedStates v. Valenzuela-Bernal, 458 U.S. at 870, 102 S.Ct. 3440 (holding that a relaxation of the specificity required in showing materiality may be supported by the fact that the witnesses' deportation deprived the defense of an opportunity to interview them to determine what favorable information they possessed). We conclude that the problems of proof presented by McIntosh's first and sixth claims for relief demand a thorough examination of the claims at an evidentiary hearing. We, therefore, hold that the common pleas court erred when it dismissed McIntosh's first and sixth claims for relief without a hearing.
 B. {¶ 22} In his second claim for relief, McIntosh assailed the disclosure before the jury of the guilty pleas of his wife and of his fellow indictee Mark Kramer. In support of this claim, he offered the affidavit of Kuhns McIntosh, in which she averred that, in exchange for her guilty plea, the state had promised that it would not mention the plea in the presence of the jury at her husband's trial. Despite the submission of outside evidence, this claim was subject to dismissal without an evidentiary hearing under the doctrine of res judicata, because it presented a matter that could fairly have been determined on appeal without resort to such evidence. See State v. Cole (1982),2 Ohio St.3d 112, 443 N.E.2d 169, syllabus; State v. Perry (1967),10 Ohio St.2d 175, 226 N.E.2d 104, paragraph nine of the syllabus.
 C. {¶ 23} In his third claim, McIntosh contended that his due-process rights were violated when the state had elicited "false testimony" from his co-indictees at trial. In his fourth and fifth claims, McIntosh contended that his due-process rights were violated when police officers presented "false testimony" at trial and in the affidavit presented to secure a search warrant. And in his seventh and final claim, McIntosh assailed trial counsel's performance in failing to call witnesses to challenge the affidavit and the warrant.
 {¶ 24} The common pleas court properly denied the third, fourth and fifth claims without a hearing, because, with respect to these claims, McIntosh failed to sustain his initial burden of submitting with his petition evidentiary material setting forth sufficient operative facts to demonstrate substantive grounds for relief. See Pankey,68 Ohio St.2d at 59, 428 N.E.2d 413; Jackson, 64 Ohio St.2d 107, 413 N.E.2d 819, syllabus. The challenge to trial counsel's performance presented in the seventh claim was also subject to dismissal without a hearing, when the evidentiary material offered in support of the claim did not raise a reasonable probability that, but for this omission of counsel, the result of the trial would have been different. See State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus.
 {¶ 25} Upon our determination that McIntosh has established an entitlement to an evidentiary hearing on his first and sixth claims for relief, we sustain the third assignment of error to the extent that it challenges the dismissal of those claims. As it relates to the balance of the claims, the third assignment of error is overruled.
 II. {¶ 26} In his second assignment of error, McIntosh contends that the common pleas court erred in "denying" his "Alternative Motion to Set Aside Judgment Pursuant to Criminal Rule 57 and Civil Rule 60(B)," when the assistant prosecuting attorneys materially misrepresented to the court at trial the restrictions imposed upon McIntosh's fellow indictees by their plea agreements. This challenge is feckless.
 {¶ 27} McIntosh appealed from the common pleas court's September 4, 2002, judgment. By this entry, the court memorialized its findings of fact and conclusions of law on McIntosh's postconviction claims and, upon its findings and conclusions, denied the postconviction petition. The court in its entry did not address McIntosh's Civ.R. 60(B) motion.
 {¶ 28} R.C. 2505.03(A) confers upon a court of appeals jurisdiction to review only a "final order, judgment or decree." The September 4, 2002, entry denying McIntosh's postconviction petition constituted a final appealable order as to the claims advanced in the petition. See R.C. 2953.23. But the record before us does not reflect a "final order [or] judgment" determining McIntosh's Civ.R. 60(B) motion. See R.C. 2505.02. We are, therefore, without jurisdiction over the matter, and, for that reason, we overrule the second assignment of error.
 III. {¶ 29} In his first assignment of error, McIntosh contends that the common pleas court erred in denying his postconviction petition and in "denying" his Civ.R. 60(B) motion, when it failed to grant him relief on the grounds advanced in his first and sixth claims for relief. For the reasons set forth above, we sustain this assignment of error to the extent that it challenges the dismissal without a hearing of his first and sixth postconviction claims, and we overrule the assignment of error to the extent that it is predicated upon the "den[ial]" of his Civ.R. 60(B) motion.
 {¶ 30} Having thus determined that McIntosh has established an entitlement to an evidentiary hearing on his first and sixth claims for relief, we reverse in part the judgment entered below and remand this case for further proceedings consistent with the law and this Decision. In all other respects, we affirm the judgment of the court of common pleas.
Judgment affirmed in part and reversed in part, and cause remanded.
Sundermann, P.J., Hildebrandt and Painter, JJ.
[1] Upon our determination in the direct appeal that the possession charges were allied offenses of similar import, we reversed the judgment of conviction and remanded the case for resentencing. See State v.McIntosh (2001), 145 Ohio App.3d 567, 763 N.E.2d 704. The trial court resentenced McIntosh in September of 2001.
[2] McIntosh, in his postconviction petition, cited to R.C.2921.32(A)(4), Obstructing justice, which provides, in relevant portion, that "[n]o person, with purpose to hinder the * * * prosecution, conviction, or punishment of another for [a] crime * * * shall * * * induce any person to withhold testimony or information or to elude legal process summoning the person to testify or supply evidence * * *."