[Cite as *State v. McGlothin*, 2019-Ohio-4858.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-180498 |
| | | TRIAL NO. B-0508457 |
| Respondent-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| CAMERON MCGLOTHIN, | : | |
| Petitioner-Appellant. | : | |

Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed as Modified

Date of Judgment Entry on Appeal:   November 27, 2019

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Scott M. Heenan*, Assistant Prosecuting Attorney, for Respondent-Appellee,

*Cameron McGlothin*, pro se.

**CROUSE, Judge.**

{¶1}    Petitioner-appellant Cameron McGlothin appeals the Hamilton County Common Pleas Court's judgment denying his 2018 petition under R.C. 2953.21 et seq. for postconviction relief.  Because the court had no jurisdiction to entertain McGlothin's late and successive petition, we affirm the judgment as modified to dismiss the petition.

{¶2}    McGlothin was charged with murder, aggravated robbery, robbery, and having weapons while under a disability in connection with the 2005 shooting death of Anthony Chastain.  In the early morning hours of August 22, 2005, as McGlothin and Chastain stood talking in front of McGlothin's house, Kevin Short approached the pair, pointed a gun at Chastain, ordered him to disrobe, shot him, and then pursued and continued shooting at him as he fled.  Chastain eluded Short by breaking into a nearby house, where police investigating the break-in found him, dead of his gunshot wounds.

{¶3}    According to the state's witnesses, McGlothin had, the night before, told Short, Randall Patterson, and Timothy Ridley that he needed money to buy crack cocaine, and that his friend Chastain, with whom he had been "feud[ing]" over the affections of a prostitute, was a drug dealer in possession of a large amount of cash.  McGlothin asked the men to help him rob Chastain.  Only Short agreed. McGlothin then called Chastain, and they met in front of Chastain's house.

{¶4}    When Short shot Chastain, McGlothin dropped to the ground.  As Chastain fled with Short in pursuit, McGlothin, along with others on the scene, entered and removed items from Chastain's car.  McGlothin then offered to sell Patterson and Gerald Akins two cell phones that he had taken from the car.  And

McGlothin later asked a neighbor to provide an alibi by telling the police that he had been at the neighbor's house when Chastain was killed.

{¶5} Police interviews with Patterson and two neighbors who had witnessed the shooting led to McGlothin's arrest the following day. McGlothin denied calling Chastain to the scene or soliciting the robbery, and he implicated Short in the shooting. Short was arrested a week later.

{¶6} At McGlothin's trial, the defense called Short to the stand. But Short, citing his pending plea agreement, invoked his privilege against self-incrimination. The defense proffered Short's statement to defense counsel that McGlothin had neither asked him nor helped him to rob Chastain.

*Procedural Posture*

{¶7} Following a jury trial and the subsequent merger of his robbery and aggravated-robbery convictions, McGlothin stood convicted of murder, aggravated robbery, and having weapons while under a disability. We affirmed his convictions on direct appeal. *State v. McGlothin*, 1st Dist. Hamilton No. C-060145, 2007-Ohio-4707; *State v. McGlothin*, 1st Dist. Hamilton No. C-060145 (Sept. 4, 2010); *State v. McGlothin*, 1st Dist. Hamilton No. C-100727 (Aug. 26, 2011). And we affirmed the denial of the relief sought in late (and then successive) postconviction petitions filed in 2008 and 2017. *State v. McGlothin*, 1st Dist. Hamilton No. C-080956 (Oct. 28, 2009); *State v. McGlothin*, 1st Dist. Hamilton No. C-170588 (Dec. 21, 2018).

{¶8} McGlothin did not appeal the overruling of his 2010 motions under Crim.R. 33 for a new trial and under Civ.R. 60(B)(5) for relief from judgment. But he thereafter sought to supplement those motions by filing, in January 2011, an affidavit made by Short in October 2010, exonerating McGlothin in Chastain's murder, and by filing, in August 2011, a motion seeking "access to exculpatory evidence" showing

3

that Short had earlier attempted to kill McGlothin with the same weapon used to kill Chastain. McGlothin's appeal from the denial of his 2011 motion for "access to exculpatory evidence" was dismissed for lack of a final appealable order. *State v. McGlothin*, 1st Dist. Hamilton No. C-110769 (Dec. 20, 2011).

*The Postconviction Petition*

{¶9} In 2018, McGlothin filed a third postconviction petition. In his petition, he sought relief from his convictions on the ground that his trial counsel had been ineffective in investigating and presenting evidence concerning the alleged "exculpatory evidence" to which he had, with his 2011 motion, sought "access." He supported that claim with his May 2018 affidavit, Short's 2010 affidavit, and an affidavit made in May 2017 by Romando Sims. He also attached to his petition a copy of a July 31, 2005 "Incident Report" to the Cincinnati Police Department, indicating that an "UNK SUSPECT FIRED 6 ROUNDS AT VICTIM [McGlothin], STRIKING HOUSE." And he attached a copy of the Hamilton County Crime Laboratory Report concerning the firearm involved in Chastain's shooting.

{¶10} In his affidavit, Short admitted shooting Chastain and insisted that McGlothin had not asked, encouraged, or invited him to rob or shoot Chastain. Short stated that he had volunteered to testify to that effect at McGlothin's trial, but on advice of counsel, had invoked his privilege against self-incrimination because of pending plea negotiations in his case. Short further stated that when he told police that McGlothin had asked him to rob Chastain, he had been acting on Patterson's advice to falsely implicate McGlothin in exchange for less prison time.

{¶11} In his affidavit, Sims, who knew McGlothin, Chastain, Short, Ridley, and Patterson from the neighborhood, averred that he had told McGlothin's investigator and trial counsel before McGlothin's trial that he had been present when

Short and Ridley "shot up" McGlothin's house in July 2005. But when Sims testified for the defense at trial, defense counsel did not question him concerning the incident. And, he asserted, he had not volunteered that information because counsel had instructed him to answer only the questions asked. Sims also averred that in "conversations" with Patterson conducted on unspecified dates "[a]fter the trial," Patterson had admitted that, in a fit of pique over his wife's infidelity with McGlothin, he had counseled Short to "lie" and implicate McGlothin in the murder in exchange for less prison time. Sims insisted that he had, again on a date not specified, related those conversations to McGlothin's trial counsel, but that counsel had not thereafter contacted him.

{¶12} In his affidavit, McGlothin averred that someone had shot at his house on July 31, 2005, four weeks before Chastain's murder. McGlothin stated that, at the time of trial, he did not know that Sims had seen the shooters and had told his defense team who the shooters were. Had he known, McGlothin asserted, he would have insisted that counsel elicit that testimony from Sims at trial and introduce into evidence the report made concerning the incident.

*No Jurisdiction to Entertain the Petition*

{¶13} In this appeal from the common pleas court's judgment denying McGlothin's postconviction petition, he presents a single assignment of error, challenging the denial of the petition "without determining whether [he] met the requirements of filing a[n] untimely or successive petition pursuant to R.C. 2953.23(A)(1)(a) and (b)." But the court did make that determination. And because the court did not err in declining to entertain the petition, we overrule the assignment of error.

{¶14} In its entry, the common pleas court expressly determined that the court "lack[ed] jurisdiction to consider [McGlothin's postconviction] petition," when it was not timely filed, and when "the Court [did] not find that he was unavoidably prevented from discovering the information he [had] relied upon in his petition." And on that basis, the court denied the petition.

{¶15} The petition was McGlothin's third and was filed 11 years after the time prescribed by R.C. 2953.21(A)(2) had expired. R.C. 2953.23 closely circumscribes the jurisdiction of a common pleas court to entertain a late postconviction petition. The petitioner must show either that he was unavoidably prevented from discovering the facts upon which his postconviction claim depends, or that his claim is predicated upon a new and retrospectively applicable right recognized by the United States Supreme Court since the time for filing his petition had expired. And he must show "by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found [him] guilty of the offense of which [he] was convicted * * *." R.C. 2953.23(A)(1).

{¶16} In his petition, McGlothin argued that his trial counsel had been constitutionally ineffective in failing to investigate or to question Sims at trial concerning Sims's allegation that Short had been the "UNK[NOWN] SUSPECT" in the July 2005 Incident Report, who had "FIRED 6 ROUNDS AT VICTIM [McGlothin], STRIKING [his] HOUSE." Thus, McGlothin had the burden of producing evidence outside the trial record that, along with the matters contained in that record, showed that his trial counsel's performance had fallen below an objective standard of reasonableness, and that counsel's deficient performance had prejudiced him, *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), that is, that

counsel's deficient performance had "so undermined the proper functioning of the adversarial process that the trial could not have reliably produced a just result." *State v. Powell*, 90 Ohio App.3d 260, 266, 629 N.E.2d 13 (1st Dist.1993), citing *Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993), and *Strickland* at 694. And because his ineffective-counsel claim was presented in a late and successive postconviction petition, the common pleas court had jurisdiction to grant McGlothin relief on that ground only upon proof that he had been unavoidably prevented from discovering the facts upon which that claim depended, and that, but for trial counsel's ineffectiveness, no reasonable factfinder would have found him guilty of robbing and murdering Chastain. *See* R.C. 2953.23(A)(1)(b).

{¶17} McGlothin argued that evidence concerning the July 2005 incident "could have called into question the State's theory of [his] involvement with Short" by raising "[t]he question [of] why [he] would conspire to commit a crime with someone who days earlier shot up his house." And he asserted that his trial counsel's failure to investigate or to question Sims at trial concerning that evidence had been outcome-determinative, when the evidence, along with the exculpatory and impeaching evidence offered in the affidavits made by Short and Sims, demonstrated his innocence of the offenses. McGlothin also insisted that he had been unavoidably prevented from discovering that evidence of his counsel's ineffectiveness, "due to the ineffectiveness of trial counsel to properly investigate the case and[/]or use information that was in counsel's possession which was favorable to [McGlothin's] defense, but unknown to [him]."

{¶18} We note at the outset that McGlothin did not, as he could not, present in his postconviction petition an independent claim of actual innocence. A claim of actual innocence based on evidence outside the trial record does not provide

substantive grounds for relief under the postconviction statutes, because the claim does not demonstrate a constitutional violation in the proceedings leading to the petitioner's conviction. *See* R.C. 2953.21(A)(1)(a); *State v. Campbell*, 1st Dist. Hamilton No. C-950746, 1997 WL 5182 (Jan. 8, 1997). The proper vehicle for such a claim is, instead, a Crim.R. 33 motion for a new trial. *See State v. Byrd*, 145 Ohio App.3d 318, 330-331, 762 N.E.2d 1043 (1st Dist.2001).

{¶19} We further note that Short's statements in his 2010 affidavit exonerating McGlothin, along with Sims's averments in his 2017 affidavit concerning Patterson's admissions during conversations following McGlothin's trial, may fairly be said to be exculpatory to the extent that they impeach trial testimony implicating McGlothin in the robbery. But that evidence cannot be said to demonstrate deficiencies in trial counsel's investigation of his case before trial or presentation of his defense at trial.

{¶20} McGlothin sought postconviction relief solely on the ground that his trial counsel had been ineffective with regard to evidence concerning the July 2005 shooting incident. But the record contradicts his assertion that he had been unavoidably prevented from discovering the facts upon which his ineffective-counsel claim depended. At his 2006 trial, defense counsel cross-examined state's witness Gerald Akins concerning Short's involvement in the July 2005 incident. Then, in his 2011 motion to supplement his 2010 Crim.R. 33 and Civ.R. 60(B)(5) motions, McGlothin sought "access to exculpatory evidence" showing that Short had earlier shot at McGlothin with the same weapon used to kill Chastain. The record does not otherwise reflect, nor did McGlothin attest in his 2018 affidavit to, efforts on his part or on his behalf to secure the evidence concerning the July 2005 incident offered in support of his 2018 postconviction ineffective-counsel claim.

**{¶21}** McGlothin's postconviction petition and its supporting material did not show that he had been unavoidably prevented from discovering the facts upon which his ineffective-counsel claim depended. Therefore, the postconviction statutes did not confer upon the common pleas court jurisdiction to entertain the petition. *See* R.C. 2953.23(A)(1). And while a court always has jurisdiction to correct a void judgment, *State ex rel. Cruzado v. Zaleski*, 111 Ohio St.3d 353, 2006-Ohio-5795, 856 N.E.2d 263, ¶ 18-19, his ineffective-counsel claim, even if demonstrated, would not have rendered his convictions void. *See State v. Hayes*, 1st Dist. Hamilton No. C-130450, 2014-Ohio-1263, ¶ 5.

*We Affirm*

**{¶22}** Because the common pleas court had no jurisdiction to entertain McGlothin's postconviction petition, the petition was subject to dismissal without an evidentiary hearing. *See* R.C. 2953.21(D) and 2953.23(A). We, therefore, modify the court's judgment denying the petition to reflect its dismissal. *See* App.R. 12(A)(1)(a). And we affirm that judgment as modified.

Judgment affirmed as modified.

**ZAYAS, P.J.,** and **MYERS, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.