[Cite as *State v. Hunter*, 2012-Ohio-2859.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO


| STATE OF OHIO, | : | APPEAL NO. C-090569 |
| | | TRIAL NO. B-0600596 |
| Respondent-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| LAMONT HUNTER, | : | |
| Petitioner-Appellant. | : | |


Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  June 27, 2012


*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Ronald W. Springman, Jr.,* Assistant Prosecuting Attorney, for Respondent-Appellee,

*Office of the Ohio Public Defender, Pamela Prude-Smithers*, Chief, Death Penalty Division, and *Kimberly S. Rigby*, Assistant State Public Defender, for Petitioner-Appellant.

Per Curiam.

{¶1} Petitioner-appellant Lamont Hunter appeals the Hamilton County Common Pleas Court's judgment denying his R.C. 2953.21 petition for postconviction relief. We affirm the court's judgment.

{¶2} In 2007, a three-judge panel convicted Hunter of aggravated murder, rape, and endangering children in connection with the death of his girlfriend's three-year-old son, Trustin Blue. For aggravated murder, the panel sentenced Hunter to death based on two death-penalty specifications: aggravated murder while committing or attempting to commit rape, and aggravated murder of a child under the age of 13. *See* R.C. 2929.04(A)(7) and (A)(9).

{¶3} Hunter unsuccessfully challenged his convictions in his direct appeal to the Ohio Supreme Court, *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, and in his 2008 postconviction petition. In this appeal from the denial of his postconviction petition, he advances three assignments of error.

## I. The Evidence

{¶4} Hunter was convicted upon evidence that Trustin had died as a consequence of a brain injury sustained while in Hunter's care. When questioned by emergency medical personnel and then law enforcement concerning the cause of the injury, Hunter maintained that Trustin had fallen down his home's basement steps. But at trial, the emergency-room physician who had examined Trustin when he was brought to the hospital and the deputy coroner who had conducted Trustin's autopsy testified that Trustin's injuries were not consistent with a fall down carpeted steps. And the deputy coroner offered her opinion that the cause of death had been a "diffuse brain injury due to blunt impact/shaking injuries to the head."

## II. The Postconviction Claims

{¶5} In his first assignment of error, Hunter challenges the common pleas court's denial of his postconviction claims without an evidentiary hearing. In his

2

second assignment of error, he assails the court's application of the doctrine of res judicata to bar certain claims. We address these assignments of error together, and we overrule them.

{¶6} To prevail on a postconviction claim, the petitioner must demonstrate a denial or infringement of his rights in the proceedings resulting in his conviction that rendered the conviction void or voidable under the Ohio Constitution or the United States Constitution. R.C. 2953.21(A)(1). A postconviction petitioner bears the initial burden of demonstrating "substantive grounds for relief," through the petition, with its supporting affidavits and other documentary evidence, and the trial record. R.C. 2953.21(C).

{¶7} A postconviction claim is subject to dismissal without a hearing if the petitioner has failed to support the claim with evidentiary material setting forth sufficient operative facts to demonstrate substantive grounds for relief. *Id.*; *State v. Pankey*, 68 Ohio St.2d 58, 59, 428 N.E.2d 413 (1981); *State v. Jackson*, 64 Ohio St.2d 107, 413 N.E.2d 819 (1980), syllabus. Conversely, "the court must proceed to a prompt hearing on the issues" if "the petition and the files and records of the case show the petitioner is * * * entitled to relief." R.C. 2953.21(E).

{¶8} The common pleas court applied the doctrine of res judicata to bar some of Hunter's postconviction claims. Under the doctrine of res judicata, a judgment of conviction bars a defendant from raising in any proceeding, other than a direct appeal from that judgment, any claim "that was raised or could have been raised" in the direct appeal. *State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104 (1967), paragraph nine of the syllabus. Thus, res judicata bars a postconviction claim that could fairly have been determined in the direct appeal, based upon the trial record and without resort to evidence outside the record. *Id.*; *State v. Cole*, 2 Ohio St.3d 112, 114, 443 N.E.2d 169 (1982).

{¶9} A postconviction petitioner may resist the application of res judicata to bar his postconviction claim by supporting the claim with outside evidence. But merely submitting outside evidence will not preclude the common pleas court from applying res judicata to bar a claim. The claim must depend on the outside evidence for its resolution. *Id.* Moreover, the outside evidence must be "competent, relevant and material" to the claim; it must "meet some threshold standard of cogency," i.e., it must be more than "marginally significant"; and it must "advance the * * * claim beyond mere hypothesis and a desire for further discovery." *State v. Coleman*, 1st Dist. No. C-900811, 1993 Ohio App. LEXIS 1486 (Mar. 17, 1993).

{¶10} When a postconviction claim depends for its resolution upon outside evidence, a common pleas court may not apply res judicata to dismiss the claim. *Perry* at paragraph nine of the syllabus; *Cole* at 114. But a reviewing court may sustain the claim's dismissal on other grounds. *State v. Peagler*, 76 Ohio St.3d 496, 668 N.E.2d 4897, paragraph one of the syllabus; *State v. Blankenship*, 38 Ohio St.3d 116, 119, 526 N.E.2d 816 (1988). *Accord State v. Gipson*, 1st Dist. Nos. C-960867 and C-960881 (Sept. 26, 1997).

### A. Prosecutorial Misconduct—Withholding Material Evidence

{¶11} In his 11th postconviction claim, Hunter contended that he had been denied a fair trial by the state's failure to disclose exculpatory evidence. He asserted that the state had violated its duty to disclose exculpatory evidence in its possession, and that the trial court had abetted the state's violation of its duty by overruling eight of his 14 pretrial motions for discovery and his motion asking the court to review, and then seal for appellate review, a copy of the prosecutor's file in his case.

{¶12} The fair-trial guarantee of the Due Process Clause of the Fourteenth Amendment to the United States Constitution imposes upon the state an obligation to disclose to a criminal accused evidence material to the accused's guilt or innocence. *Brady v. Maryland*, 373 U.S. 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Such evidence is

4

"material" only if there is a "reasonable probability" that its disclosure would have changed the outcome of the trial. *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). The determination of this probability entails an inquiry into not whether a trial with the undisclosed evidence would have yielded a different verdict, but whether the evidence, "considered collectively," "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles v. Whitley*, 514 U.S. 419, 434-436, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). *Accord State v. Ketterer*, 126 Ohio St.3d 448, 2010-Ohio-3831, 935 N.E.2d 9, ¶ 23-24; *State v. Hughbanks*, 1st Dist. No. C-010372, 2003-Ohio-187, ¶ 57.

{¶13} In Hunter's direct appeal, the Ohio Supreme Court rejected his challenge to the overruling of his pretrial motion for disclosure of the state's rebuttal witnesses and his motion to seal the prosecutor's file. *Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, at ¶ 133-136. His postconviction challenge fared no better. Hunter neither specified the undisclosed exculpatory evidence nor supported his claim with evidence outside the record. He instead cited successful nondisclosure challenges advanced in this and other courts that, he insisted, demonstrate "an ongoing systemic problem concerning the [non]disclosure of exculpatory evidence by the Hamilton County Prosecutor's Office" and "warrant[ed] the granting of discovery to demonstrate that the chronic problem continued in [his] case."

{¶14} But a postconviction petitioner is not entitled to discovery to develop his claims unless the petition and its supporting evidentiary material demonstrate substantive grounds for relief. *State v. Issa*, 1st Dist. No. C-000793, 2001 Ohio App. LEXIS 5762 (Dec. 21, 2001). Because Hunter failed to support his claim with evidentiary material setting forth sufficient operative facts to demonstrate substantive grounds for relief, he was not entitled to discovery to develop the claim, *see id.*, and the claim was subject to dismissal without a hearing. *See* R.C. 2953.21(C); *Pankey*, 68 Ohio St.2d at 59, 428 N.E.2d 413; *Jackson*, 64 Ohio St.2d 107, 413 N.E.2d 819, syllabus.

5

Therefore, the common pleas court properly dismissed Hunter's 11th postconviction claim.

### B. Ineffective Assistance of Counsel

{¶15}   In claims 2 through 10 and 12 through 17, Hunter contended that he had been denied the effective assistance of counsel by his trial counsel's inadequate preparation and presentation of his case during the guilt and penalty phases of his trial. We hold that the common pleas court properly denied these claims without an evidentiary hearing.

{¶16} To prevail on a claim of ineffective assistance of counsel, a postconviction petitioner must demonstrate (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989).  To establish prejudice, the petitioner must demonstrate that counsel's deficient performance "so undermined the proper functioning of the adversarial process that the trial could not have reliably produced a just result."  *State v. Powell*, 90 Ohio App.3d 260, 266, 629 N.E.2d 13 (1993) (citing *Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122 L. Ed. 2d 180 [1993], and *Strickland*).

{¶17}   *Jury waiver.*  In his 8th claim, Hunter contended that his trial counsel had been ineffective in counseling him to waive a jury trial and to proceed instead to a trial before a three-judge panel.  A jury waiver must be voluntary, knowing, and intelligent.  Crim.R. 23; *State v. Ruppert*, 54 Ohio St.2d 263, 271, 375 N.E.2d 1250 (1978).  And a waiver is presumptively so if it was executed and filed in conformity with R.C. 2945.05 et seq.  *State v. Bays*, 87 Ohio St.3d 15, 19, 716 N.E.2d 1126 (1999) (citing *United States v. Sammons*, 918 F.2d 592, 597 [6th Cir.1990]).

{¶18}   The Ohio Supreme Court rejected Hunter's challenge in his direct appeal to counsel's effectiveness in counseling his jury waiver.  The court found nothing in the

6

trial record to rebut the presumption that the waiver had been voluntary. And it concluded that "[u]nder the circumstances, [the jury waiver] appear[ed] to have been a reasonable tactical decision." *Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, at ¶ 48-55.

{¶19} In support of his postconviction challenge, Hunter offered his own affidavit. He averred that he had waived a jury trial because his counsel had convinced him that a jury would be biased by substantial pretrial publicity and that voir dire would be "long and drawn out," and because he did not know, because counsel had failed to advise him, that he could move for a change of venue, that his jury waiver would limit his challenges on appeal, or that the vote of a single juror would prevent the imposition of the death penalty.

{¶20} In evaluating counsel's performance, a reviewing court "must indulge a strong presumption that counsel's conduct f[ell] within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052, 80 L.Ed.2d 67 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 [1955]). *Accord Bradley*, 42 Ohio St. 3d at 142, 538 N.E.2d 373. We perceive nothing in Hunter's affidavit that could fairly be said to have overcome that presumption, or that might have altered the supreme court's conclusion, based on the trial record, that counseling the waiver was sound trial strategy. Thus, the common pleas court properly denied Hunter's challenge, in his 8th claim, to his counsel's effectiveness in that regard.

{¶21} *Change of venue.* In his 9th claim, Hunter asserted that counsel had been ineffective in failing to request a change of venue on the ground of "extensive" and "prejudicial" pretrial publicity. He supported the claim with copies of press releases and news articles dating from Trustin's January 2006 death through Hunter's June 2007 trial. The media reports, he insisted, portrayed him as a child-abuser and linked

him to the "media frenzy" surrounding the August 2006 murder, in an adjacent county, of a three-year-old boy by his foster parents.

{¶22} Due process demands that a criminal accused be afforded "[a] fair trial in a fair tribunal." *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955). *Accord State v. Weiner*, 37 Ohio St.2d 11, 15, 305 N.E.2d 794 (1974). And the right to a jury trial secures to the accused the right to a fair trial by impartial jurors. *Irvin v. Dowd*, 366 U.S. 717, 722, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). *Accord State v. Zuern*, 32 Ohio St.3d 56, 68, 512 N.E.2d 585 (1987). When pretrial publicity threatens to deny these rights, a trial court may grant a change of venue. Crim.R. 18(B); R.C. 2901.12(K).

{¶23} The decision to grant a change of venue is committed to the sound discretion of the trial court. *State v. Maurer*, 15 Ohio St.3d 239, 251, 473 N.E.2d 768 (1984). Ordinarily, proof of pretrial publicity will not, alone, compel a change of venue. *State v. Landrum*, 53 Ohio St. 3d 107, 116-117, 559 N.E.2d 710 (1990). An accused seeking a change of venue on the ground of pretrial publicity must demonstrate that a juror was "actually biased" by exposure to that publicity. *State v. Gross*, 97 Ohio St.3d 121, 2002-Ohio-5524, 776 N.E.2d 1061, ¶ 29. And the "best test" of juror bias is voir dire. *State v. Bayless*, 48 Ohio St.2d 73, 98, 357 N.E.2d 1035 (1976). But proof of actual juror bias is not required, and juror bias may be presumed, in the rare case when "inflammatory, prejudicial pretrial publicity * * * so pervades or saturates the community as to render virtually impossible a fair trial by an impartial jury drawn from that community." *Mayola v. Alabama*, 623 F.2d 992, 997 (5th Cir.1980). *Accord State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 86.

{¶24} Hunter waived his right to a jury trial. His jury waiver was not demonstrably unknowing, involuntary, or unintelligent. And because it preceded jury selection, it preempted any voir dire examination of prospective jurors for his case. Thus, the trial record does not demonstrate actual juror bias.

{¶25} Nor did the evidence of pretrial publicity offered in support of Hunter's postconviction challenge give rise to a presumption of juror bias. That publicity, while not insubstantial, could not fairly be said to have been so pervasive as to preclude any possibility of empanelling an impartial jury.

{¶26} In the absence of evidence demonstrating actual juror bias or giving rise to a presumption of bias, Hunter's 9th claim, challenging counsel's effectiveness in failing to seek a change of venue, was properly denied.

{¶27} *Investigation, preparation, and presentation—medical evidence.* In claims 2 through 4, Hunter challenged his trial counsel's effectiveness in countering the medical evidence presented by the state during the guilt phase of his capital trial. Hunter complained that counsel had engaged in "ill-informed and argumentative cross-examination" that had allowed the state's medical experts "to repeatedly state their damaging conclusions" concerning the cause and manner of Trustin's death. He further contended that counsel, instead of relying exclusively on his own medical knowledge and his cross-examination of the state's medical experts, should have retained the services of a forensic pathologist to provide expert assistance in preparing and presenting at trial his defense that Trustin had died from injuries sustained in a fall down the basement steps.

{¶28} In support of his claims, Hunter offered his own affidavit, in which he averred that counsel had cited "his own medical knowledge," along with the fact that he had been admitted to medical school, to explain his decision to rely on cross-examination of the state's medical experts in lieu of calling a defense expert. Hunter also offered outside evidence in the form of an opinion letter from forensic pathologist Werner U. Spitz, M.D., and copies of the materials used by Dr. Spitz in arriving at his opinion.

{¶29} Dr. Spitz disagreed with the state's experts concerning the cause and manner of Trustin's death. The emergency-room physician and the deputy coroner

testified at trial that Trustin's injuries were not consistent with a fall down the stairs. The deputy coroner determined that the cause of death had been a "diffuse brain injury due to blunt impact/shaking injuries to the head," and that "[t]he manner of death [had been] homicide." *Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, at ¶ 29 and 122 (quoting the deputy coroner's trial testimony). Dr. Spitz's review of the autopsy report, medical records, and trial testimony of the state's experts led him to the contrary opinion, that "the death of [Trustin was] consistent with head injuries sustained in a fall down a flight of stairs onto a concrete floor."

{¶30} The deputy coroner testified at length concerning the bases of her opinion. She testified that her postmortem examination had disclosed two separate areas of broad impact on Trustin's head and a serious neck injury, where the cartilage had been pulled loose from the thoracic vertebra. From the two distinct impact sites, the deputy coroner concluded that Trustin had been struck in the head with "something" or that "his body had been slammed against something." *Id.* at ¶ 26, 27, and 122.

{¶31} The postmortem examination also revealed "a 1.9 centimeter laceration of Trustin's anus[,] a hemorrhage along the rectum's lining[,] a hemorrhage going into both sides of the pelvis[, and] three areas of perforation of the rectal mucosa." The deputy coroner found those perforations to be "similar to what you could produce with something like a pencil, jammed with a pencil or something sharp like that, or could even be from an angled insertion of something." *Id.* at ¶ 26-28 (quoting the deputy coroner's trial testimony).

{¶32} Concerning the defense theory that Trustin's death had been accidental, the deputy coroner stated that she could "only * * * conceive of this being partially caused by a fall down 11 carpeted steps * * * if he had fallen off the side of the stairs and landed on his head twice." But, she insisted, a fall down the stairs "still wouldn't have explained the anal injuries." *Id.* at ¶ 29 (quoting the deputy coroner's trial testimony).

{¶33} Dr. Spitz found, to the contrary, "no injuries on the body surface that [were] not explainable by a fall down the steps, including the anal laceration and associated hemorrhage with the soft tissues in the pelves." The autopsy photographs, he insisted, showed "two, parallel, horizontal, sharply demarcated, impacts to the head, which by their shape and pattern are consistent with bruises from impacts on the edges of the steps." He found that the "anal orifice show[ed] no evidence of abrasion, bruising or the typical tearing as would have occurred from adult penile penetration." And he concluded that, because the "skeletal survey postmortem, after organ donation," showed no evidence of injury to the cervical spine, "the separation of the lower cervical spine * * * [was] an autopsy artifact."

{¶34} The Sixth Amendment to the United States Constitution imposes upon criminal defense counsel a duty to investigate the defendant's case. *Strickland*, 466 U.S. at 690-691, 104 S.Ct. 2052, 80 L.Ed.2d 67. To discharge that duty, counsel must either conduct a "reasonable investigation[]" or "make a reasonable decision that makes [a] particular investigation[] unnecessary." *Id.* at 691. *Accord State v. Johnson*, 24 Ohio St.3d 87, 89, 494 N.E.2d 1061 (1986).

{¶35} In Hunter's direct appeal, the supreme court rejected his challenge to his counsel's effectiveness in relying exclusively on cross-examination to undermine the testimony of the state's medical experts. The court noted that counsel's decision to rely on cross-examination of the state's experts in lieu of presenting defense experts did not, in and of itself, constitute ineffective assistance of counsel. *Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, at ¶ 66 (citing *State v. Nicholas*, 66 Ohio St.3d 431, 436, 613 N.E.2d 225 [1993], and *State v. Thompson*, 33 Ohio St.3d 1, 10-11, 514 N.E.2d 407 [1987]). And the court found that, in the absence of evidence in the trial record of expert medical testimony that could and should have been presented, counsel's decision to rely exclusively on cross-examination "appear[ed] to have been a legitimate

11

'tactical decision.' " *Id.* (quoting *State v. Foust*, 105 Ohio St.3d 137, 2004-Ohio-7006, 823 N.E.2d 836, ¶ 97).

{¶36} The supreme court also rejected Hunter's challenges in his direct appeal to the sufficiency of the evidence and to the balance struck by the three-judge panel in weighing the evidence presented at trial. In the process, the court determined that the testimony of the state's witnesses had been "neither inherently unreliable nor unbelievable," and that Hunter's was not the "exceptional case in which the evidence weigh[ed] heavily against the conviction." *Id.* at ¶ 128-129 (quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 [1997], quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 [1983]).

{¶37} The outside evidence offered in support of claims 2 through 4 would not have compelled a contrary assessment. Neither counsel's investigation of Hunter's defense nor his cross-examination of the state's medical experts was demonstrably ineffective. And Dr. Spitz's opinion concerning the cause and manner of Trustin's death could not be said to have cast the state's experts' opinions in such a different light as to undermine any confidence in the outcome of Hunter's trial. Thus, Hunter failed to demonstrate a reasonable probability that, but for counsel's alleged deficiencies in investigating and presenting the medical evidence, the results of his trial would have been different. Therefore, the common pleas court properly denied the claims.

{¶38} *Investigation, preparation, and presentation—alternative-killer defense.* In claims 5 through 7, Hunter assailed his counsel's effectiveness in investigating and in presenting at trial evidence that others might have caused Trustin's death. He asserted that counsel had failed to rebut the state's evidence pointing to him as the perpetrator of physical abuse that had twice sent Trustin to the hospital in 2004, and that counsel had failed to impeach with prior inconsistent statements the testimony of state's witnesses Amber White and Wilma Forte.

{¶39} The state presented at trial evidence that Trustin had previously been injured while in Hunter's care. An emergency-room visit in January 2004 revealed a broken tibia; a visit in June 2004 disclosed old and new fractures on Trustin's hand and foot, swollen lips, ear injuries, hair loss, bruises on his head, and swelling and abrasions on his penis. In each instance, Hunter claimed that the injuries had been caused by a fall while carrying Trustin down steps.

{¶40} After the June 2004 incident, Trustin was removed from his mother's custody and placed in the custody of Amber White. White and her daughter Wilma Forte testified at trial that, beginning in 2003, Trustin had evinced a fear of Hunter in the form of crying, shaking, and vomiting. Forte further testified that, two days before his death, Trustin had told her that he feared Hunter, and that Hunter had hurt him.

{¶41} At trial, the three-judge panel rejected defense counsel's challenge under Evid.R. 404(B) to the admission of evidence concerning the January and June 2004 incidents. On appeal, the supreme court upheld the panel's ruling, finding these "other acts" to be so "eerily similar" to the charged offenses that they were relevant to the truthfulness of Hunter's claim that Trustin had died as a consequence of an accidental fall. *Id.* at ¶ 114.

{¶42} In support of his postconviction claims, Hunter offered outside evidence in the form of agency reports, interviews, and assessments. He argued that this evidence, had it been presented at trial, would have suggested that some of Trustin's 2004 injuries had been caused by an allergic reaction, and that Trustin's mother, who suffered from mental-health problems, "violent tendencies," and "severe parenting skills deficiencies," had been the person who in 2004 had injured Trustin. The evidence would also, he insisted, have provided proof that White had lied when, on cross-examination by defense counsel, she denied that her brother, who sometimes stayed with her, had been previously charged with rape, and that Forte had lied when,

on cross-examination, she stated that her concern for Trustin's safety had only extended to situations involving Hunter.

{¶43} In addition to the evidence provided by White and Forte and the evidence concerning the 2004 incidents, the state adduced at trial substantial evidence implicating Hunter in Trustin's death. And again, Hunter's was not the "exceptional case in which the evidence weigh[ed] heavily against the conviction." *Id.* at ¶ 128-129. Because counsel's alleged deficiencies concerning these matters could not be said to have been outcome determinative, the common pleas court properly denied claims 5 through 7.

{¶44} *Investigation, preparation, and presentation—mitigation evidence.* Hunter directed claims 12 through 17 against the adequacy and effectiveness of counsel's preparation for and presentation of his case in mitigation. These claims were also properly denied without an evidentiary hearing.

{¶45} Hunter argued that his counsel had been ineffective in failing to reasonably investigate, or to retain mitigation, psychological, and substance-abuse experts to aid in preparing and presenting, mitigating evidence concerning Hunter's family history, background, and character. In support of these claims, he offered outside evidence in the form of documents showing his criminal record and history of substance abuse and the affidavits of family members, a clinical psychologist, and several mitigation specialists. This evidence, Hunter insisted, demonstrated his counsel's "fail[ure] to present a complete picture of who Lamont Hunter was."

{¶46} In Hunter's direct appeal, the supreme court rejected his challenges to trial counsel's effectiveness in presenting his case in mitigation. The court noted that counsel initially appointed to represent Hunter had employed a mitigation specialist and a psychiatrist, and that retained counsel had also requested a mitigation specialist, had secured two continuances to prepare the case in mitigation, and had presented "detailed" and "extensive" mitigating evidence. *Id.* at ¶ 65 and 70. The court found

nothing in the trial record to show that counsel's mitigation investigation had been inadequate, or that counsel had been ineffective in failing to present the testimony of a psychologist or mitigation specialist.

{¶47} In evaluating Hunter's death sentence, the court noted that counsel had presented in mitigation testimony by five family members and two other witnesses concerning Hunter's alcohol and drug abuse and dependence, his father's alcoholism, his family's history of domestic violence, and his criminal record, which included convictions for drug trafficking and domestic violence. Of the statutory mitigating factors, the court found only the R.C. 2929.04(B)(7) "catchall" provision applicable. The court gave "some weight" to the evidence of Hunter's love and care for his children and his family's love and support. But the court gave "little weight" to the evidence concerning Hunter's history of substance abuse, in the absence of some evidence of a connection between his substance abuse and Trustin's death. And the court gave no weight to Hunter's expressions of remorse and sorrow, because Hunter had continued to deny any role in Trustin's death.

{¶48} Weighing that evidence, the court found that the aggravating factors clearly outweighed the mitigating factors beyond a reasonable doubt. The outside evidence submitted by Hunter in support of claims 12 through 17 would not have compelled a contrary conclusion. Thus, because Hunter failed to demonstrate substantive grounds for relief, the common pleas court properly denied the claims.

{¶49} *Conflict of interest.* In his 10th postconviction claim, Hunter contended that he had been denied his constitutional right to the assistance of counsel free from conflicts of interest. He argued, and offered outside evidence demonstrating, that counsel had represented him while laboring under a federal investigation that, soon after Hunter's conviction, had culminated in counsel's conviction and incarceration and the suspension of his license to practice law. Hunter asserted that counsel's representation of him while under investigation had "created a conflict of

interest" that had materially affected counsel's performance at trial, as evidenced by the instances of counsel's ineffectiveness alleged in Hunter's other postconviction claims.

{¶50} The Sixth Amendment right to the effective assistance of counsel secures to a criminal defendant both the right to competent representation and the right to representation that is free from conflicts of interest. *Wood v. Georgia*, 450 U.S. 261, 271, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981); *Glasser v. United States*, 315 U.S. 60, 70, 62 S.Ct. 457, 86 L.Ed. 680 (1942). To prevail on a claim that he was denied his right to conflict-free counsel, a defendant must demonstrate "an actual conflict of interest." *Wood* at 273. An "actual conflict of interest," for purposes of the Sixth Amendment, is "a conflict of interest that adversely affects counsel's performance." *Mickens v. Taylor*, 535 U.S. 162, 172, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002), fn. 5. Thus, to prove an "actual conflict of interest," the defendant must show that his counsel "actively represented conflicting interests," and that the conflict "actually affected the adequacy of his representation." *Id.* (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 349-350, 100 S.Ct. 1708, 64 L.Ed.2d 333 [1980]).

{¶51} In Hunter's direct appeal, the supreme court rejected his contention that his counsel had been ineffective because of his pending federal charges. The court noted that "[p]ending criminal charges against an attorney are, without more, insufficient to support a claim of ineffective assistance of counsel." *Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, at ¶ 44-45 (quoting *State v. Williams*, 52 Ohio App.3d 19, 556 N.E.2d 221 [1989], paragraph two of the syllabus). And the court held that Hunter had failed to satisfy the *Strickland* standard of outcome-determinative ineffectiveness, because the trial record was devoid of evidence concerning the pending charges or supporting Hunter's claims that counsel's need for cash had prompted him to undertake Hunter's representation and that counsel's own legal issues had affected the quality of that representation.

{¶52} While Hunter had based his challenge on direct appeal upon his Sixth Amendment right to competent counsel, he predicated his 10th postconviction claim upon the guarantee of conflict-free counsel. A "conflict of interest" arises when regard for one duty leads to disregard of another duty. Thus, the right to conflict-free counsel is implicated when an attorney represents multiple clients with competing interests. *State v. Manross*, 40 Ohio St.3d 180, 182, 532 N.E.2d 735 (1988) (holding that a conflict of interest arises when counsel incurs a duty on behalf of one client "to contend for that which [his] duty to another client requires him to oppose").

{¶53} The right to conflict-free counsel may also be implicated when counsel's representation of the defendant is adversely affected by counsel's personal or financial interests. *Mickens* at 174; *see, e.g., State v. Bryant*, 6th Dist. No. L-84-249 (Oct. 18, 1985) (finding a conflict of interest when retained counsel was indicted for drug trafficking for accepting as his fee cocaine alleged to have been stolen by defendant from his murder victims). But, again, the right protects against " 'an actual conflict of interest' * * * as opposed to a mere theoretical division of loyalties." *Mickens*, 535 U.S. at 172, 122 S.Ct. 1237, 152 L.Ed.2d 291 (quoting *Wood*, 450 U.S. at 273, 101 S.Ct. 1097, 67 L.Ed. 2d 220). Thus, Hunter was required to demonstrate not only that his counsel had actively represented conflicting interests, but also that the conflict had actually affected the adequacy of counsel's representation. *See id.* (quoting *Cuyler*, 446 U.S. at 349-350, 100 S.Ct. 1708, 64 L.Ed.2d 333). Nothing in the evidentiary material submitted by Hunter in support of his claim could fairly be said to demonstrate a causative link between the alleged conflict of interest and an inadequacy in his counsel's representation. Therefore, the common pleas court properly denied his 10th claim.

### C. Actual Innocence

{¶54} In his 1st claim, Hunter contended that outside evidence offered in support of his other claims demonstrated his innocence of the charges. The common pleas court properly denied this claim of actual innocence, because the claim did not

demonstrate a constitutional violation in the proceedings leading to Hunter's convictions. *See State v. Campbell*, 1st Dist. No. C-950746, 1996 Ohio App. LEXIS 5114 (Nov. 20, 1996). *Accord State v. Byrd*, 145 Ohio App.3d 318, 331, 762 N.E.2d 1043 (1st Dist. 2001).

### D. Constitutionality of Death Sentence

{¶55} In claims 18 through 22, Hunter advanced various challenges to the constitutionality of his death sentence. These claims were also properly denied without a hearing.

{¶56} *Proportionality.* In his 19th claim, Hunter contended that his death sentence violated the Due Process and Equal Protection Clauses of the state and federal constitutions because the sentence was disproportionately more severe than sentences imposed on similarly-situated capital defendants in Hamilton County. As proof of the county's "arbitrary and capricious" application of the death-penalty law, he provided a list of cases since 1998 in which the death penalty had been sought but had not been imposed.

{¶57} In Hunter's direct appeal, the Ohio Supreme Court conducted the proportionality review mandated by R.C. 2929.05 and concluded that the death penalty imposed in his case was "appropriate and proportionate when compared to death sentences imposed for other child-murders * * * [and] when compared with death sentences approved for other rape-murders." *Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, at ¶ 206-207. Proportionality review is not constitutionally mandated. *Pulley v. Harris*, 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984); *State v. Jenkins*, 15 Ohio St.3d 164, 175, 473 N.E.2d 264 (1984). Thus, the scope of the proportionality review conducted under R.C. 2929.05 is for the courts to determine. *State v. Steffen*, 31 Ohio St.3d 111, 123, 509 N.E.2d 383 (1987). The Ohio Supreme Court has determined that a reviewing court "need [not] consider any case where the

death penalty was sought but not obtained." *Steffen* at 124. Therefore, the court properly denied Hunter's 19th claim.

{¶58} ***Prosecutorial discretion.*** In his 20th claim, Hunter also invoked the state and federal constitutional due-process and equal-protection guarantees, along with the Eighth Amendment's protection against cruel and unusual punishment, to argue that the "uncontrolled discretion" afforded the Hamilton County Prosecuting Attorney in seeking the death penalty permits the death penalty to be imposed arbitrarily, capriciously, and discriminatorily.

{¶59} In support of these claims, Hunter offered a statistical "breakdown by disposition" of capital cases prosecuted in Hamilton County that, he insisted, "demonstrates the erratic method of charging and prosecuting [the county's] capital cases." But both the United States Supreme Court and the Ohio Supreme Court have rejected constitutional challenges to the death penalty predicated on the mere fact of prosecutorial discretion, *Gregg v. Georgia*, 428 U.S. 153, 199-200, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); *Jenkins* at 169-170, or based upon statistics that purport to show a racial disparity in the imposition of the death penalty. *McCleskey v. Kemp*, 481 U.S. 279, 297, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987); *Steffen* at 124. Because Hunter failed to support his claim with outside evidence demonstrating racial discrimination in the imposition of the death penalty in his case, the common pleas court properly denied his 20th claim. *See Steffen* at 125.

{¶60} ***Ineffective counsel.*** In his 18th claim, Hunter asserted that his counsel had been ineffective in failing to offer at trial evidence supporting the argument that the death penalty is applied in an unconstitutionally arbitrary and discriminatory manner. This claim depended upon the success of, and thus logically fell with, Hunter's 19th and 20th claims. Therefore, the common pleas court properly denied Hunter's 18th claim.

{¶61} ***Reporting for proportionality review.*** In his 21st claim, Hunter contended that his due-process and equal-protection rights were violated by

inadequacies in the reporting system mandated by R.C. 2929.021 and 2929.03 for appellate proportionality review, as that system is administered by Hamilton County. The common pleas court properly denied this claim, because Hunter failed to demonstrate that the alleged inadequacies in the county's reporting system prejudiced the proportionality review conducted by the supreme court in his case.

{¶62} *Lethal injection.* And the court properly denied Hunter's challenge in his 22nd claim to the constitutionality of the state's use of lethal injection as a means of execution. The Ohio Supreme Court has determined that execution by lethal injection does not run afoul of the Eighth Amendment's proscription against cruel and unusual punishment. *State v. Carter*, 89 Ohio St.3d 593, 608, 2000-Ohio-172, 734 N.E.2d 345.

### E. Cumulative Error

{¶63} In his 23rd and final postconviction claim, Hunter contended that the cumulative effect of the constitutional deprivations alleged in his petition's other claims was to deny him a fair trial. A judgment of conviction may be reversed if the cumulative effect of errors deemed separately harmless is to deny the defendant a fair trial. *State v. DeMarco*, 31 Ohio St.3d 191, 509 N.E.2d 1256 (1987), paragraph two of the syllabus. But by its terms, the doctrine of "cumulative error" will not provide a basis for reversal in the absence of multiple errors. *State v. Madrigal*, 87 Ohio St.3d 378, 398, 721 N.E.2d 52 (2000). Because Hunter failed to support his postconviction petition with evidence demonstrating multiple constitutional deprivations, the common pleas court properly denied the cumulative-error challenge advanced in his 23rd claim. *See State v. Van Hook*, 1st Dist. No. C-910505, 1992 Ohio App. LEXIS 5350 (Oct. 21, 1992).

### III. Discovery

{¶64} In his third and final assignment of error, Hunter contends that he was denied due process by the common pleas court's failure to afford him the "essential mechanisms of off-record fact development," that is, discovery and the funds to retain experts to aid him in developing his postconviction claims. This challenge is untenable.

20

{¶65} The postconviction statutes do not contemplate discovery in the initial stages of a postconviction proceeding. *State ex rel. Love v. Cuyahoga Cty. Prosecutor's Office*, 87 Ohio St.3d 158, 159, 718 N.E.2d 426 (1999); *State v. Zuern*, 1st Dist. Nos. C-900481 and C-910229, 1991 Ohio App. LEXIS 5733 (Dec. 4, 1991). And the failure of the statutes to so provide does not contravene any state or federal constitutional right. *State v. Jones*, 1st Dist. No. C-990813, 2000 Ohio App. LEXIS 6197 (Dec. 29, 2000). Thus, a postconviction petitioner is entitled to discovery to develop his claims, and to experts to aid in that discovery, only if the petition and its supporting evidentiary material demonstrate substantive grounds for relief. *Issa*, 1st Dist. No. C-000793, 2001 Ohio App. LEXIS 5762.

{¶66} Because Hunter's postconviction claims were properly denied without an evidentiary hearing, he was not entitled to discovery or the funding for experts to aid in discovery. Accordingly, we overrule the third assignment of error.

### IV. We Affirm

{¶67} Finding no merit to any of the challenges advanced on appeal, we affirm the judgment of the common pleas court.

Judgment affirmed.

**HILDEBRANDT, P.J., SUNDERMANN** and **HENDON, JJ.**

Please note:

The court has recorded its own entry on the date of the release of this opinion.